576 P.2d 507

STATE of Arizona, Appellee,

v.

**Hristijan FILIPOV, Appellant.**

**No. 1 CA–CR 2447.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 27, 1977.

Rehearing Denied Feb. 16, 1978.

Review Denied March 7, 1978.

---

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Martin, Feldhacker & Friedl by Gregory H. Martin, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

Appellant Hristijan Filipov was convicted of receiving stolen property on October 28, 1975 after a trial by jury. He appeals from the trial court's denial of two motions for mistrial and designates three grounds for reversal: (1) that remarks made by the prosecutor in closing argument were fatally prejudicial; (2) that his due process rights were violated by the state's unlawful offer to reduce the sentence of a witness in exchange for that witness' testimony; and (3) that evidence of alleged prior bad acts was improperly admitted. We will deal with each issue in the order presented above.

## I. PROSECUTOR'S CLOSING ARGUMENT

For his first assignment of error, appellant argues that the prosecutor's closing argument was improper and reversible in three regards. First, he states that the prosecutor improperly expressed his personal belief of the defendant's guilt in closing argument. Second, the appellant urges that the prosecutor improperly injected an issue of national or ethnic background into the trial. Third, appellant states that the prosecutor improperly discussed an alleged accomplice who was present in the courtroom during trial but who did not testify, referring in closing argument to the defendant's failure to call the man as a witness. We will treat the argument as a whole.

Based upon the following statements from closing argument, appellant contends that the prosecutor improperly argued his opinion of the defendant's guilt to the jury:

"*The man is guilty. He is a criminal. And the State went all out of its way to get another criminal in to put the finger on him.*

"*Okay, don't call me next week, tomorrow, saying, 'Mr. Iniguez, I felt he was guilty,' and so on.*

"*I felt he was guilty, but we wanted to get out of there, so I voted not guilty, so I apologize, you know, for what the rest did.*

"You know, the man is guilty. There is no question about it if the State has proven its case beyond any doubt. (emphasis added)

\*      \*      \*      \*      \*      \*

"And like I said, the State does not want you to convict an innocent man, but the State wants you to convict that man because that man is not innocent. *That man is guilty. He's guilty, guilty, guilty.*

"The defense attorney has the nerve to come up today and say, 'Ladies and gentlemen of the jury, you may not believe it, but there are people that are charged that are innocent.' That man was charged and I have done my job. He is not innocent. He is trying to convince you that he is, but look at all the evidence and lies, the toolbox, the paint, his statements. (emphasis added)

\*      \*      \*      \*      \*      \*

"The last thing I will tell you, was he being honest? Huh-uh. Look at the evidence, and if you do not return a guilty verdict, ladies and gentlemen, you are not doing your jobs. Thank you very much."

Appellant did not object to the argument at trial.

Appellant next complains that the prosecution improperly injected national background into the trial by referring to appellant, a Bulgarian immigrant, as "Gypsy", and by making the following remarks in rebuttal argument:

"And he says that he just came over from Bulgaria and he escaped a Communist country and that he is not going to do anything illegal. It is bad for his citizenship. *So do all the Sicilianos that came over.* Now you take it from there. See? And they don't know. *Sicilianos don't*

*speak English, but Scilianos know the score just the way he does.* And he puts you down because you don't make—or he puts Robinson down and that's an inference that he puts Americans down because they don't make as much money as that guy that just came over and has a very prosperous business." (emphasis added)

In closing argument, appellant's counsel had stated as follows:

"He's Bulgarian. He never said, and we never intimated that he was dumb. But you saw him. He has problems understanding English. Now, I can speak Russian, German, Italian, Bulgarian; but if they plop me down in Argentina, I am going to have a tough time talking and conversing with the people down there.

"The fact that he knows five or six languages is no indication to you whether or not he can understand English that well. He is not dumb. We never for a minute intimated that he was dumb.

"Three thousand or four thousand dollars doesn't go into the pocket of a dumb person. He said on a good month he will make that. Sometimes he makes $200 a week. Everything he gets he pushes into his little business. He and Angel Iordanoff came over from Bulgaria. That was the evidence. They came over here three or four years ago and opened up a little shop, a wrecking yard down in South Phoenix, which is more than I can say for your own native-born citizens like Willie Robinson who steals from people and burglarizes. He opens up a little yard, gets a business going. And he told you, 'I am not a stealer. I am not stupid enough to participate in a burglary to buy stuff that I know is stolen, to lose my license,' or whatever it was he said, 'and so that I can't get my U.S. citizenship.' He said, 'I am not that dumb. It is not worth it to buy this junk really and then have me come in here' and sit right where he is today and in a short while have you people decide whether or not he is guilty of Receiving Stolen Property.

"He said, 'It is not worth it to me. I wouldn't do it.' Believe me, ladies and gentlemen, the reasonable inference to be drawn is that he didn't escape Bulgaria, he didn't escape from the Communists to come over here and sit in the courtroom."

Appellant asserts that the prosecutor's argument "was a blatant attempt to link appellant to the 'Mafia' and to point out that the prosecution witnesses were 'Americans' whereas appellant was an immigrant." The appellant further contends that the alleged prejudicial conduct was aggravated by the fact that the prosecutor and the police had referred to appellant as "Gypsy" several times during the trial. The state urges that appellant's statements in closing argument "opened the door to the prosecutor's rebuttal remarks," and as such were invited error. *State v. Parker*, 22 Ariz.App. 111, 524 P.2d 506 (1974).

Finally, appellant complains about the prosecutor's comment on the failure of the defense to explain a possible witness' presence in the courtroom. During the trial, evidence was elicited indicating that one Steve Reyes, aka "Debo", was also involved in the burglary with Robinson. Reyes' appearance was described by witnesses, and his presence in the courtroom was noted by Sgt. Jonovich during his (Jonovich's) testimony. Reyes was not called as a witness, although he was subpoenaed by the defense as a potential witness. Appellant submits that the prosecution improperly argued Reyes' presence in the courtroom and his failure to testify in the following comments:

"Now, the State did not make a deal with Reyes, the guy that was here yesterday. The State did not subpoena Reyes. Nonetheless, he was here. But you may reach whatever reasonable inferences you may from that evidence that you heard about Steve Reyes, *both as to his involvement and as to his presence in this courtroom yesterday.*

"MR. MARTIN: Your Honor, I am going to object. That is improper. He is not arguing the evidence.

"THE COURT: Yes, the objection is sustained with respect to the matter just referred to. Let's proceed. (emphasis added)

\*  \*  \*  \*  \*  \*

"Now, he talks about being fair and let's have it out in the open. Now, ladies and gentlemen, did he at any time, you know, *explain the presence of Mr. Reyes* in this case? No, he didn't.

"MR. MARTIN: Your Honor, I am going to object. That is improper.

"MR. INIQUEZ: Your Honor, the presence in this case, he was the one of the perpetrators of the burglary.

"THE COURT: The objection is sustained. Let's move on.

"MR. INIGUEZ: He was a perpetrator of this crime. *Now, he keeps objecting because I keep bringing his name up, Steve's name up.* And here he is. And when you look at it, you can't help but to say the guy was involved in this case. The defense attorney did not say one word about this guy. He didn't say one word except that he helped plot out the burglary. He didn't say a word about him.

"Who did he talk about? George Hubbard and Hernandez. That's the guys and Robinson. He didn't say one word about this guy. When you look at that Exhibit, you are going to have to ask yourself, 'Where is Debo?' See, he was one of the perpetrators at the time. And yet he has the nerve and audacity to come here and say, 'Let's have everything out in the open. Let's be fair. Let's be impartial on the scales of justice.'" (emphasis added)

Appellant alleges that the prosecutor's comments about Reyes constituted argument of facts not in evidence. Appellant further asserts that he was ethically prohibited from arguing Reyes' failure to testify and presence in the courtroom because the prosecution had requested and been granted the following instruction:

"It is no defense to the crimes charged against the Defendant in this case that one or more persons not now on trial might have also participated or cooperated in the crimes thus charged. The jury is not to speculate on or even to consider the reasons for the absence from the courtroom of such other persons, if any, as the only matter before you for decision is the guilt or innocence of this particular Defendant."

The essence of the above instruction is that the jury is not to consider whether other participants have been charged with the crime in determining the guilt or innocence of the defendant, and not to restrict arguments by counsel under appropriate circumstances. However, it is also clear from the record that defense counsel restricted his argument based on the instruction while the prosecutor did not.

At the close of the trial, appellant moved for a mistrial based on the comments of the prosecutor referring to Reyes. The trial judge noted that the reason for Reyes' failure to testify was not presented in testimony and was not properly before the jury. He denied the mistrial motion, however, stating:

"It is the Court's judgment that the sustaining of that objection, together with the instruction, eliminates the prejudice that counsel complains of, and for that reason only, the motion for a mistrial is denied."

■ We believe that while any one of the improper statements taken alone might not warrant a mistrial, the cumulative effect of the argument was prejudicial and mandates a reversal. *State v. Woodward*, 21 Ariz. App. 133, 516 P.2d 589 (1973).

■ First, it is clear that in closing argument an attorney should never express his personal belief in the defendant's guilt or innocence. *State v. Abney*, 103 Ariz. 294, 440 P.2d 914 (1968). The State asserts that the prosecutor was not arguing his personal belief of the guilt of defendant, but rather, was simply commenting upon the evidence. While the prosecutor here did not specifically say, "I believe the man is guilty," or "It's my opinion that the man is guilty," we read his argument on guilt as going beyond mere

comment on the evidence. His statement that "the State went all out of its way to get another criminal in to put the finger on him," urges the jury to convict because the state had worked so hard to bring appellant to trial, and not because the evidence proved him guilty beyond a reasonable doubt. That remark and the one immediately following it asking the jurors not to telephone and apologize for a vote of acquittal called to the attention of the jurors "matters which they would not be justified in considering in determining their verdict." *Sullivan v. State*, 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936). Finally, the prosecutor's statement, "He's guilty, guilty, guilty," went beyond comment on the evidence, and by virtue of its sheer repetition, became what appears to be a statement of personal opinion as to guilt.

■ Second, we are concerned with the prosecutor's attempt to inject an issue of national origin into the trial. We believe that his repeated references to the appellant as "Gypsy" were harmful in that among many circles, the term "gypsy" has the connotation of a nomadic "con man." The state correctly calls our attention to the fact that testimony revealed that appellant was sometimes known as "Gypsy." Therefore, we believe that the use of the nickname alone would not mandate reversal. However, the cumulative effect of the improper statements does. We are most concerned with the prosecutor's implied comparison of appellant with Sicilianos. We believe that such an argument was an appeal to passion and prejudice, linking, by implication, the appellant to the "Mafia." We note Judge Frank's dissent in *United States v. Antonelli Fireworks Co.*, 155 F.2d 631 (2d. Cir., 1946):

> "If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice." 155 F.2d at 659.

*See also, State v. Moore*, 108 Ariz. 215, 495 P.2d 445 (1972).

■ Finally, we are disturbed by the prosecutor's repeated reference to Steve Reyes after objections to the line of argument concerning Reyes had been sustained. The state calls our attention to *State v. Cozad*, 113 Ariz. 437, 556 P.2d 312 (1976). *Cozad* held that 17 A.R.S., Arizona Rules of Criminal Procedure, Rule 15.4(c) and the comments thereafter did not prohibit the state's comments on defendant's failure to call a witness within his control. In *Cozad*, the babysitter who was not called allegedly could have given testimony favorable to the defense. Hence, the comment was proper. In this case, Robinson testified that Reyes was a co-planner and co-perpetrator of the burglary. Sgt. Jonovich testified that Reyes took the stolen property to Filipov's place with Robinson. Therefore, Reyes was potentially a witness for the state, not the defense, and hence, was not a witness within the control of defendant as contemplated by the comments to Rule 15.4(c). Moreover, the question of whether Reyes would or would not testify was not raised through the testimony. We believe that the state or the defense may properly comment upon the failure of the other party to produce a witness in appropriate circumstances. Such circumstances exist when the witness not produced allegedly would give testimony favorable to the party who fails to call the witness. On the record before us, no foundation was laid indicating that Reyes' testimony would be favorable to the defense; there was not even a suggestion at trial through the testimony of the other witnesses that his testimony would help the defense. The argument was simply designed to call attention to the fact that Reyes had been present in the courtroom and had not testified. Accordingly, it was not within the scope of comment contemplated by Rule 15.4(c) and, moreover, it called attention to matters not properly in evidence. Last, the prosecutor's indicated umbrage with defendant's proper objections, ("Now, he keeps objecting because I keep bringing his name up") was designed to imply that the defense was trying to hide something.

Taken as a whole, the cumulative effect of the state's closing argument was prejudicial, "with a strong possibility that the statements influenced the jury verdict." *State v. Woodward, supra,* 21 Ariz.App. at 135, 516 P.2d at 591. In closing we are again reminded of Judge Frank's dissent in *United States v. Antonelli Fireworks Co., supra.* Speaking of the failure of the majority to reverse because of improper closing argument, he wrote:

"This court has several times used vigorous language in denouncing government counsel for such conduct as that of the United States Attorney here. But, each time, it has said that, nevertheless, it would not reverse. Such an attitude of helpless piety is, I think, undesirable. It means actual condonation of counsel's alleged offense, coupled with verbal disapprobation. If we continue to do nothing practical to prevent such conduct, we should cease to disapprove it. For otherwise it will be as if we declared in effect, 'Government attorneys, without fear of reversal, may say just about what they please in addressing juries, for our rules on the subject are pretend-rules. If prosecutors win verdicts as a result of 'disapproved' remarks, we will not deprive them of their victories; we will merely go through the form of expressing displeasure. The deprecatory words we use in our opinions on such occasions are purely ceremonial.' Government counsel, employing such tactics, are the kind who, eager to win victories, will gladly pay the small price of a ritualistic verbal spanking. The practice of this court—recalling the bitter tear shed by the Walrus as he ate the oysters—breeds a deplorably cynical attitude towards the judiciary." 155 F.2d at 661.

While we reverse on this issue, because the other two issues raised on appeal may surface in a retrial we will address these issues.

## II. DUE PROCESS

During the trial, appellant admitted purchasing the stolen property but testified that he did not know that it was stolen. The state's case consisted of the testimony of the police officers, the victim, and the testimony of William Robinson, the confessed burglar in this case. Robinson testified that he and appellant discussed the burglary before it occurred, and how to accomplish the burglary. Robinson further testified that he took some of the stolen items back to appellant's place of business after the burglary, and that appellant purchased them from him. Robinson asserted that by virtue of appellant's early participation in the planning of the burglary and knowledge of it, appellant knew that the items he purchased were stolen.

Prior to the trial of appellant, Robinson had been convicted on the burglary charge and had been sentenced to the Arizona State Prison for a term of two to five years. According to Robinson's testimony, Robinson was approached by the prosecutor in the instant case concerning a reduction of the two to five year sentence if Mr. Robinson would agree to testify against the appellant. The testimony of Robinson reveals that the prosecutor told Robinson in jail that if he would testify against appellant, the prosecutor would ask Robinson's sentencing judge to reduce the sentence to one year in the county jail and five years' probation. Appellant did not object to Robinson's testifying in the trial, although he did object to the leading form of the questions posed to Robinson regarding his agreement with the state. Appellant states that Rule 24.3, Arizona Rules of Criminal Procedure does not permit the reduction of a sentence already lawfully imposed. *State v. Falkner,* 112 Ariz. 372, 542 P.2d 404 (1975). He urges therefore, that the reduction on Robinson's sentence was unlawful and in violation of appellant's due process rights.

■ The state first contends that appellant lacks standing to raise the unlawfulness of Robinson's sentence reduction. In so contending, the state calls to our attention *United States ex rel. Falconer v. Pate,* 319 F.Supp. 206, 210 (N.D.Ill., 1970), affirmed without opinion, 478 F.2d 1405 (7th Cir.), cert. denied, 414 U.S. 1094, 94 S.Ct. 726, 38 L.Ed.2d 551, and the cases cited therein. The cases cited by appellee address the issue of standing to raise personal constitutional guarantees of third persons.

We believe that the issue posed herein differs. Appellant does not attempt to raise a violation of Robinson's right to privacy, privilege against self-incrimination, or other analogous personal rights of Robinson. In other words, appellant does not attempt to place himself in Robinson's shoes. Appellant instead suggests that we should exclude Robinson's testimony because of the unlawful activity of the state in procuring same. He asserts that we should impose an exclusionary rule *per se* on unlawful activity which was harmful to him and not to Robinson. Therefore, we believe that the cases cited by appellee are inapplicable to the question of standing. We have been unable to find any authority directly on point in answering the standing issue. We do note that a criminal defendant was permitted to challenge the confession of a co-defendant witness in *Bradford v. Johnson*, 354 F.Supp. 1331 (E.D.Mich., 1972); aff'd 476 F.2d 66 (6th Cir., 1972). The *Bradford* court stated that although Bradford lacked standing to raise his co-defendant's rights against self-incrimination, ". . . where that incrimination is the result of torture, the Court ought to scrutinize the method of incrimination to insure the defendant that there was fairness in his prosecution." *Id.* at 1335. Similarly, in *State v. McAllister*, 253 La. 382, 218 So.2d 305 (1969), the court, without discussion of the standing issue, allowed defendant to raise the alleged unconstitutionality of the conviction of a co-defendant witness. We also note the obvious futility of granting standing to object to the reduction of his sentence solely to Robinson. For the foregoing reasons, we reject the state's contention and hold that appellant does have standing to raise the issue of the unlawfulness of the sentence reduction insofar as it relates to appellant's alleged due process claim. We now turn to that issue.

The question posed is one of first impression in Arizona, and we have found a paucity of authority in other jurisdictions directly on this issue. It is clear that Rule 24.3, Arizona Rules of Criminal Procedure does not permit a sentencing judge's reduction of an already lawfully imposed sentence. Rule 24.3 is as follows:

"The court may correct any unlawful sentence or one imposed in an unlawful manner within 60 days of the entry of judgment and sentence but before the defendant's appeal, if any, is filed."

The court, therefore, has no inherent power to change a sentence already lawfully imposed. *State v. Falkner, supra.* The actions of the prosecutor in attempting to obtain a reduction of sentence for Robinson in violation of Rule 24.3 may be without legal sanction. Nevertheless, we must consider whether the prosecutor's agreement with Robinson violated appellant's due process rights.

A "denial of due process 'as applied to a criminal trial * * * is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it * * * [the court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial.'" *State v. Maldonado*, 92 Ariz. 70, 76, 373 P.2d 583, 587 (1962), citing *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, 180 (1941). Thus, it was held in *Bradford v. Johnson, supra*, that the use of a co-defendant's coerced confession implicating defendant was a denial of a defendant's due process rights. In *Bradford*, the co-defendant witness, Payne, had been severely beaten and tortured by the police for hours prior to his confession. He had been told that if he did not confess and name his co-perpetrator, his wife would be arrested and his children taken from him. Only after the most gruesome and painful acts of torture by the state did Payne confess and implicate Bradford. At trial, Payne testified against Bradford in conformity with his earlier confession. After Payne's conviction, he recanted his confession and was granted a new trial on the ground that his confession had been coerced. Bradford then raised the question of whether his due process rights had been violated by the use of Payne's testimony at the trial against Bradford. The district court held that under the circumstances, the unlawful conduct of the police officers so tainted Payne's testimony that its use at Bradford's trial was synony-

mous with the knowing use of perjured testimony or testimony purchased by a litigant. The court in *Bradford* relied on the rationale set forth in *Lisenba v. California, supra*:

"The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." *Lisenba, supra*, 314 U.S. at 236, 62 S.Ct. at 290, 86 L.Ed. at 180.

In *State v. McAllister, supra*, the Louisiana court held, on the other hand, that the use of a co-defendant's testimony against the accused was not unconstitutional as to the accused when the co-defendant was serving a sentence resulting from an alleged unlawful conviction. The accused in *McAllister* suggested that the alleged unconstitutionality of the witness' conviction rendered his testimony against the accused unconstitutional also. The Louisiana court in disagreeing noted that the jury was aware that the witness was serving the sentence, and held that the witness' conviction was "a matter to be considered by the jury in determining the weight to be given the testimony, the same as that of any other witness." 218 So.2d at 308.

We now look to the facts of the instant case to determine whether they pose a situation of such fundamental unfairness as to have fatally infected the trial below. Testimony revealed that at the time of his first investigatory contact with the police, Robinson denied having any part in the burglary, implicating instead some of his friends. Testimony further revealed that on the same day, Robinson told the officer that he had received some of the goods from the burglary and sold them to appellant, and that appellant knew they were stolen at the time of the purchase. From the record, we perceive that Robinson changed his story as to his own involvement in the crime several times. He first denied his involvement; then he stated that he was the "lookout man." Finally, he admitted the extent of his own involvement in the burglary. However, the testimony indicates that Robinson did not change his story as to appellant. From his second investigatory contact with the police, Robinson implicated appellant;

consequently, we cannot say that Robinson changed his testimony as to appellant on the basis of the state's offer to reduce Robinson's sentence.

▮ Moreover, Robinson was questioned in detail on both direct and cross-examination about his agreement for a reduction of sentence. The jury was aware of the fact that Robinson had received an offer to reduce his sentence in exchange for his testimony. They were also aware of the fact that he had changed his story as to his own involvement in the burglary a number of times, and were aware of the fact that he had done so in order to "beat the rap." Additionally, the jury was aware of the fact that Robinson had a prior felony record. Finally, the matter of Robinson's credibility was argued extensively in closing argument. We believe that Robinson's credibility and the weight to be given his testimony was a matter for the jury. *State v. McAllister, supra*. We further believe that the jury had sufficient evidence before it from which to make a determination of the weight to be given Robinson's testimony. We hold, therefore, that appellant's due process rights were not violated.

### III. ALLEGED PRIOR BAD ACT TESTIMONY

For his third assignment of error appellant asserts that alleged prior criminal activity was improperly presented to the jury through the testimony of the investigating officer, Sgt. Thomas Jonovich. During the state's direct examination of Sgt. Jonovich, the prosecutor asked the officer about conversations Jonovich had had with Robinson during the investigation. The following exchange occurred:

"Q. And did he tell you where the property went?

"A. He did.

"Q. What did he tell you?

"A. He told me that the property had been fenced to a gentleman that owned a business out on South 16th Street, a fellow that he believes to be a French man that they called Gypsy.

"Q. And for the benefit of us, could you please tell or explain to the jury

what 'fenced' means in the street language?

"A. Yes, when a person fences something, that means they take an item of stolen property and then transfer it to another party or person that receives stolen property, a person that makes a business of receiving stolen property.

"Q. And is that person known as or called the fence?

"A. Yes, he is called the fence. It is the man that furnishes them money for their property."

Appellant urges that Robinson had not used the term "fence" to describe appellant in the conversation with Jonovich, and that the officer alone used the term "fence" in his testimony of the exchange.

The defense attorney cross-examined Jonovich on the use of the term "fence" as follows:

"Q. You defined the word 'fence' to the jury. Is that the word that Mr. Robinson used on the 20th of March?

"A. I don't specifically recall him saying that he fenced it. He said that he downed it, the property. He specifically used the term 'downed,' which carries about the same connotation.

"Q. And fence, I guess, is your term that you used here in the report then obviously if he didn't say it?

"A. He may have said it. To the best of my recollection, I don't recall if he did say it or not. My notes would reflect it if he did say 'fence.' I haven't looked at that particular portion."

At the close of the cross-examination of Jonovich, defense counsel moved for a mistrial based upon the use of the term "fence" by Jonovich. The motion was denied, and appellant urges that the denial was error, stating that the use and definition of the term "fence" by Jonovich injected into the trial insinuations of other criminal conduct (i.e., that the defendant was "in the business of receiving stolen property") by the defendant with no factual basis.

It appears that the possibility that the term "fence" was Jonovich's alone was made amply manifest to the jury. It also appears that if Robinson did not use the term "fence," he used an equally perjorative term, i. e., "down." It is in addition clear to us that the testimony referred to the activity of Robinson in disposing of the property, ("I don't specifically recall him saying that he fenced it. He said that he downed it, the property.") The testimony does not refer to appellant as a "fence" nor does it imply that Robinson referred to appellant as a "fence." Even if, at the end of the direct examination of Jonovich, the jury thought that Robinson had referred to appellant as a "fence," the confusion was clarified on cross-examination. Appellant cites us to *State v. Jacobs*, 94 Ariz. 211, 382 P.2d 683 (1963), *State v. Kellington*, 93 Ariz. 396, 381 P.2d 215 (1963), *State v. Smith*, 96 Ariz. 150, 393 P.2d 251 (1964), and *State v. Green*, 110 Ariz. 293, 518 P.2d 116 (1974). In *Jacobs*, a reference was made to a "mug shot" of defendant; in *Kellington*, evidence came out about defendant's prior criminal record where the defendant did not take the witness stand; in *Smith*, testimony was elicited to the effect that the defendant filled out an addict form; and in *Green*, the defendant was referred to as a dealer. In each of those cases, reversal was mandated because of testimony directly linking defendant with prior criminal conduct. We agree with the contention of the state here that the holding of *State v. Kiser*, 26 Ariz. App. 106, 546 P.2d 831 (1976) is on point. In *Kiser*, the reference was not directly applied to the defendant and was held to be "so attenuated that if there was any error it was harmless beyond a reasonable doubt." *Kiser, supra*, 26 Ariz.App. at 112, 546 P.2d at 837. We hold, therefore, that the lower court's denial of defendant's motion for mistrial was not error.

Based upon improper closing argument, the judgment of conviction is reversed and the matter remanded to the trial court for a new trial.

WREN, P. J., and EUBANK, J., concur.