760 P.2d 541

**STATE of Arizona, Through the CRIMINAL DIVISION OF the ATTORNEY GENERAL'S OFFICE, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Daniel E. Nastro, a Judge thereof, Respondent Judge,**

**Elden GARDNER, Real Party in Interest.**

**No. CV–87–0111–PR.**

Supreme Court of Arizona, En Banc.

July 19, 1988.

Reconsideration Denied Sept. 20, 1988.

---

Robert K. Corbin, Atty. Gen. by Timothy C. Holtzen, Asst. Atty. Gen., Phoenix, for petitioner.

Dean W. Trebesch, Maricopa County Public Defender by Stephen M.R. Rempe, Mary Lynn Bogle, Deputy Public Defenders, Ross P. Lee, Former Maricopa County Public Defender, Phoenix, for real party in interest.

FELDMAN, Vice Chief Justice.

The state seeks relief from an order requiring the prosecutor to explain his use of peremptory challenges against two Black members of a jury panel. The court of appeals affirmed, *State v. Superior Court,* 156 Ariz. 512, 753 P.2d 1168 (Ct.App.1987), and we granted review to consider whether a Caucasian defendant has standing to object to a prosecutor's alleged discriminatory use of peremptory challenges to remove all Black members of a jury panel. We have jurisdiction under Ariz. Const. art. 6, § 5.

## FACTS

Defendant, Elden Gardner, was charged with leaving the scene of a fatal accident, a class 6 felony. A.R.S. §§ 28–661 and –663. Gardner is Caucasian; his trial attorney was a Black deputy public defender. During jury selection in Maricopa County Superior Court, the prosecutor used peremptory challenges to strike the only two Black members of the jury panel. Gardner objected. After a hearing, the trial judge concluded the defendant had made a prima facie showing of racial discrimination and asked the prosecutor to explain the use of the peremptories. The prosecutor refused, claiming the judge had no power to initiate such an inquiry except in cases where the defendant and the excluded veniremen were members of the same cognizable racial group. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because the challenged jurors were Black and defendant was Caucasian, the state argued that the *Batson* rule was inapplicable. Relying on the equal protection clause of the fourteenth amendment and, arguably, also on the sixth amendment right to trial by an impartial jury, the judge ruled that he had a proper basis to inquire into the prosecutor's motives in using the peremptory challenge to strike the Black veniremen.

The state sought special action relief from the court of appeals.[1] That court stayed further proceedings in the trial court, accepted jurisdiction of the special action petition and denied relief from the trial court's ruling. The court of appeals held that a Caucasian defendant had standing to challenge a prosecutor's allegedly racially motivated use of the peremptory challenge to remove all Black members of the jury panel. The court also upheld the trial judge's finding that defendant had made a prima facie showing that the prosecutor had purposefully discriminated in using the peremptory challenges. In effect, therefore, the court of appeals affirmed the order requiring the prosecutor to explain his use of the peremptory challenge. The state now seeks both review and special action relief from this court, asking us to vacate the order of the trial judge. *See* Rule 8, Ariz.R.P.Spec.Act., 17A A.R.S., and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We decline to do so.

## PRESENT STATUS OF THE LAW

At the outset, we reiterate certain basic principles. The law does not permit the state to discriminatorily exclude any "substantial and identifiable class of citizens" from the privilege and obligation of jury service. *See Peters v. Kiff,* 407 U.S. 493, 503, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972). As Judge Jacobson wrote in the majority opinion for the court of appeals, such an idea is "antithetical to the notion that juries must represent the range of human nature and the variety of human experience." 156 Ariz. at 514, 753 P.2d at 1170, citing *Peters.* The recent changes in the law worked by *Batson* and its progeny have thus been more procedural than substantive.

The *Batson* Court demonstrated this principle by its modification of the holding in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain,* the Court reaffirmed that the state's purposeful discrimination in jury panel selec-

tion violated the equal protection clause of the fourteenth amendment. *Swain* admonished that

> [f]or racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution ... but is at war with our basic concepts of a democratic society and a representative government.

*Id.* at 203–04, 85 S.Ct. at 827, quoting *Smith v. State of Texas,* 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 (1940).

*Swain* held, however, that there was a presumption that the prosecution had used its peremptory challenge for a permissible reason. The presumption could be overcome only by a showing of systematic exclusion rather than by the state's conduct in a particular case. 380 U.S. at 223, 85 S.Ct. at 837. However, when *Swain* was decided, the court had not yet incorporated sixth amendment guarantees into the safeguards afforded by the fourteenth amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (sixth amendment first declared binding on states). Thus, the issues raised in *Swain* involved only the equal protection clause of the fourteenth amendment.

In *State v. Wiley,* 144 Ariz. 525, 698 P.2d 1244 (1985), this court expressly cited and followed *Swain* to support our refusal to "[require] an examination of the prosecutor's reasons for the exercise of his challenges in any given case." *Wiley,* 144 Ariz. at 535, 698 P.2d at 1254. In *Wiley,* however, the defendant did raise both sixth amendment and equal protection challenges. Defendant argued that his sixth amendment right to a trial by an impartial jury encompassed the right to be tried by a jury drawn from a fair cross-section of the community. *See, e.g., Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (a five-member jury does not adequately represent the community as required by sixth amendment); *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984); *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748,

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.

148 Cal.Rptr. 890 (1978); *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986).

We noted in *Wiley* that the district court in *McCray* ruled that the right to a representative cross-section in jury composition prohibited the prosecution from using peremptory challenges to exclude an entire ethnic or racial group from the trial jury. *Wiley,* 144 Ariz. at 535, 698 P.2d at 1254. Nonetheless, we adopted *Swain*'s rule whether the attack on discriminatory use of the peremptory challenge was based upon equal protection grounds, sixth amendment rights or the identical right guaranteed in art. 2, § 24 of the Arizona Constitution. *Wiley,* 144 Ariz. at 536, 698 P.2d at 1255. We recognized, however, that the holding was procedural and the *state had no substantive right to discriminate against or exclude members of any group.* As Justice Cameron stated for the majority:

> We remind the state that the duty of the prosecution is to seek justice, not merely to convict. It is entitled, therefore, not to a jury biased in its favor but to one that will view the evidence fairly and impartially. It should use its peremptory challenges toward this end. In view of the potential harm to this extremely important right [of peremptory challenge], however, we will not look behind the removal of jurors to the prosecutors' reasons for striking them. Rather, we will continue to adhere to the Swain rationale that a defendant is not entitled to a new trial unless he is able to show systematic exclusion of an identifiable group.

*Id.* at 537, 698 P.2d at 1256 (citations omitted).

Many jurists questioned *Swain*'s applicability to cases in which the sixth amendment was raised. *See Perry v. Louisiana,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); *Roman v. Abrams,* 822 F.2d 214 (2d Cir.1987); *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985) (discriminatory use of peremptory challenges violates sixth amendment), *on remand,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Wiley,*

144 Ariz. at 543, 698 P.2d at 1262 (Feldman, J., specially concurring).

Indeed, even in equal protection cases, *Swain*'s evidentiary requirements did not long prevail. In 1986, *Batson* overruled the portion of *Swain* requiring proof of systematic exclusion. The Court held that a defendant could establish a prima facie case for an equal protection violation even though his evidence was based solely on the prosecutor's exercise of peremptory challenges at that defendant's own trial.

■ Obviously, subsequent cases have undercut the reasoning in *Wiley*. *Wiley* stressed the "importance" of peremptory challenges and the consequent need that "their use should not be impaired or infringed upon." 144 Ariz. at 537, 698 P.2d at 1256. The decision in *Batson* now permits the very infringements on the use of peremptory challenges that *Swain* previously prohibited. Thus, we must overrule *Wiley*. Its attempt to preserve the full reach of the peremptory challenge is now an anachronism which we cannot follow on either federal or state grounds. We hold, therefore, that a prosecutor's racially motivated use of peremptory challenges in a particular case violates the jury guarantee clause of the sixth amendment.

### "STANDING"

A. Is the prohibition against discrimination limited only to situations where the defendant and excluded or rejected jurors were of the same race?

■ The state contends that this defendant, a Caucasian, has no standing to complain of the exclusion of Black veniremen. We disagree with this argument for several reasons.

Defendant argues that under the *sixth* amendment to the federal constitution his right to an "impartial jury" includes the opportunity to obtain a jury comprising a fair cross-section of the public. This principle is well established. *See Ballew, Peters, McCray, Wheeler, Gilmore.* Obviously, this right is implicated not only when those rejected for discriminatory motives are members of the defendant's own racial or

ethnic group. The *discriminatory* exclusion of jurors from any cognizable group necessarily violates the right to a chance for a fair cross-section, no matter what the racial or ethnic characteristics of the defendant, his lawyer, the judge or any party to the action. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Fields v. People*, 732 P.2d 1145 (Colo.1987); *Gilmore*, 103 N.J. at 536 n. 9, 511 A.2d at 1164 n. 9.

The state argues that the explicit language of *Batson* applies only to those cases in which the excluded jurors and the defendant himself are of the same racial group. This is true.[2] We believe, however, that the language of *Batson*'s holding was aimed at the specific facts and legal issues presented to the Court. Lacking specific guidance from the Supreme Court, we must determine in this case whether the *Batson* principle applies to situations going beyond *Batson*'s specific facts and to those involving the jury trial guarantee of the sixth amendment.

Arizona provides an illuminating frame of reference. This state has a rich and diverse racial and ethnic composition of Native American, Hispanic, Caucasian, Black, Oriental and other citizens. Throughout Arizona's history, members of a wide variety of racial, ethnic and religious groups have settled in the territory and state, contributing their unique cultures, traditions and views to those of Arizona's indigenous peoples. Both the newcomers and the native peoples of this region have contributed immeasurably to the growth and development of our state. If we apply the *Batson* principle exclusively to those cases in which the defendant and the excluded jurors are of the identical racial or ethnic group, our trial judges and lawyers will frequently be forced to inquire into the racial and ethnic makeup of particular jurors. If possible we should adopt the rule that would obviate or reduce the necessity for such an unseemly and intrusive procedure.[3]

**B. Trial juries.**

Some may argue that the sixth amendment guarantee of an "impartial jury" prohibits the state from discriminating in the selection of the jury panel, but not in the selection of the trial jury. We reject this hypothesis. Any discriminatory exclusion from either the jury panel or the trial jury directly impairs the constitutional right to the opportunity to obtain a jury drawn from a fair cross-section of the community. *McCray*, 750 F.2d at 1128. In either event, a discriminatory process has skewed the demographic odds and created a racially selected jury. In such cases, the state's discrimination against a "distinctive group" deprives a defendant of the *opportunity* to obtain a trial jury representing a fair cross-section of the community. *See Buchanan v. Kentucky*, — U.S. —, —, 107 S.Ct. 2906, 2913–14, 97 L.Ed.2d 336 (1987).

The harm done by such state discrimination is not limited to violation of a defendant's constitutional rights. It also damages our system of justice by depriving minorities of their opportunity for jury service, one of the most important privileges and responsibilities of citizenship. Worse yet, such methods create a perception that

---

2. As a result, other jurisdictions have interpreted *Batson* to require the defendant to be a member of a cognizable racial group and that the prosecution exercise challenges to remove that group's members from his jury. *See Smith v. State*, 515 So.2d 149 (Ala.Crim.App.1987); *Kibler v. State*, 501 So.2d 76 (Fla.Dist.Ct.App. 1987); *Pope v. State*, 256 Ga. 195, 345 S.E.2d 831 (1986); *Phillips v. State*, 496 N.E.2d 87 (Ind. 1986); *State v. Christensen*, 720 S.W.2d 738 (Mo. App.1986); *State v. Jackson*, 317 N.C. 1, 343 S.E.2d 814 (1986).

3. One such case has already come to the attention of this court. In *State v. Claborne*, No. CV–87–0117–SA, the defendants were Ernest "Bunky" Maestas and John David Maestas. The prosecutor allegedly used peremptory challenges to exclude all Native Americans from a jury which was to try two Hispanic Americans. We declined jurisdiction for procedural reasons, ignoring the very issue raised here. We did not, however, thereby indicate our approval of the concept that our courts should become involved in deciding at what point a Hispanic American becomes a Native American or vice versa. Any rule of law that would make such inquiries relevant to the decision-making process is to be avoided.

the American criminal justice system is imposed on certain minorities rather than operating to protect and further the rights of all citizens.

■ For these reasons, we believe that the sixth amendment guarantee of an impartial jury forbids the state from discriminating in jury selection, whether before or after the drawing of the names of the veniremen. We therefore adopt a clear, simple rule: under the jury trial clause of the sixth amendment, the state may not make *discriminatory* use of the peremptory challenge to exclude any substantial and identifiable class of citizens from the privilege and obligations of jury service. *See Buchanan, Peters.*[4]

This is not to say, of course, that the state is forbidden to exclude any or all members of a cognizable group from the trial jury under any circumstances. Neither equal protection concepts nor the right to trial by a fair cross-section of the population gives the defendant the right to a trial jury of any particular composition. *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *McCray,* 750 F.2d at 1129; *Wheeler.* The constitution only prohibits the prosecutor from destroying the possibility of a fair cross-section by the *discriminatory* use of peremptory challenges to exclude jurors *because* of their membership in an identifiable group. *Roman, McCray, Wheeler, Gilmore.* The prosecutor is as free as ever to use the peremptory challenges to exclude jurors for nondiscriminatory reasons.

Like the *Batson* rule, the construction we today give to the sixth amendment is retroactive to those cases not yet final or pending on direct appeal as of the date of this opinion. *See Griffith,* 479 U.S. at 328, 107 S.Ct. at 716. Of course, as in the

cases presenting the original *Batson* issue, waiver governs the retroactivity issue. *See State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987) (*Batson* challenge does not involve fundamental error and was waived absent timely objection).

In the instant case, we conclude, therefore, that the trial judge neither exceeded his jurisdiction nor erred in requiring the county attorney to provide an explanation for the use of peremptories excluding all Black veniremen from the jury.

## DEFENDANT'S PRIMA FACIE SHOWING

The state argues, finally, that the defendant failed to make a prima facie showing that the state made discriminatory use of the peremptory challenges. We agree with the court of appeals' opinion and analysis on this point.

## CONCLUSION

We affirm the trial judge's order. We approve the opinion of the court of appeals as supplemented by this opinion and remand this case for further proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.

---

4. Of course, the United States Supreme Court may disagree with our view and interpret the sixth amendment guarantee more restrictively than we have in this opinion. In this event, interpretation of the jury trial guarantee contained in art. 2, § 24 of the Arizona Constitution would become determinative. *See Deer Valley Unified School District v. Superior Court,* 157 Ariz. 537, 760 P.2d 537 (1988). For some reason, neither party to this case has raised, relied on or discussed the Arizona rescript of the federal provision. Thus, this opinion does not reach the question of whether we would interpret art. 2, § 24 of the Arizona Constitution so as to forbid state discrimination through the use of the peremptory challenge. *Cf. Deer Valley.*