774 P.2d 811

**STATE of Arizona, Appellee,**

**v.**

**Edward Neil SMITH, Appellant.**

No. CR–86–0327–AP.

Supreme Court of Arizona,
En Banc.

May 11, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Roberson & Shelley by Robert J. Roberson, Yuma, and J. Douglas McVay, Phoenix, for appellant.

MOELLER, Justice.

## JURISDICTION

This is an appeal by Edward Neil Smith (defendant) from a conviction on two counts of first degree murder and one count of escape. Defendant was sentenced to two concurrent life terms for murder to be served consecutively to an eight-year term for escape. This court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 13–4031 and –4033, and Ariz.R. Crim.P. 31, 17 A.R.S.

## ISSUES

1. Whether failure to give a "proximate cause" instruction in connection with the felony murder instruction constituted fundamental error.

2. Whether the prosecutor's closing argument concerning felony murder constituted fundamental error.

3. Whether the trial court committed fundamental error by failing to define the word "knowingly" for the jury in connection with the escape charge.

4. Whether defendant was deprived of effective assistance of counsel by his trial counsel's failure to request the instructions referred to in issues 1 and 3 and to fail to object to the argument referred to in issue 2.

5. Whether the trial judge abused his discretion by denying defendant's pre-trial motion for a change of venue.

6. Whether the prosecutor committed fundamental error by expressing his personal opinion concerning the guilt of defendant during final argument.

7. Whether defendant could properly be found guilty of felony murder and not guilty of premeditated murder for the same death.

## FACTS

On April 9, 1986, defendant and his twin brother, Donald, one of the murder victims in this case, boarded a Greyhound bus in El Centro, California bound for Yuma. The brothers knew there were outstanding warrants for their arrest in Texas. The previous month Donald and his brother-in-law bought a .38–caliber revolver in Texas, and then picked up defendant in Oklahoma. The three men then travelled to Spokane, Washington. The twin brothers were continuing their flight from law enforcement while on the bus bound for Yuma, where they were to meet Donald's wife at her mother's residence.

Passengers on the bus witnessed the brothers drinking beer and described the two as obnoxious. After one of the brothers left the bathroom on the bus, a passenger found bullets in the bathroom. The passenger notified the bus driver. The driver stopped at the border inspection station and requested the employees there to call ahead to Yuma authorities.

Officer Maas of the Yuma Police Department was dispatched to check into the situation. By the time he arrived at the Yuma bus station the bus was already at the terminal. The Smith brothers were off the bus. Donald was on the phone outside the station; the defendant stood nearby. Officer Maas approached the defendant and asked about a disturbance on the bus. When Officer Maas attempted to frisk defendant, the defendant resisted and the officer put defendant on the ground. In the ensuing struggle, however, the tables were turned and the defendant managed to place Officer Maas on the ground.

Some witnesses testified that defendant then began shooting Officer Maas. Other witnesses testified that defendant's brother, Donald, approached Officer Maas and began firing rounds into him. In any event, Officer Maas was able to return Donald's fire and shot him several times, killing him. Officer Maas died shortly thereafter from his wounds. Defendant fled the scene and was captured a week later in Oklahoma.

Defendant was returned to Yuma for trial on an indictment, which charged him with three counts: the first degree murder of Officer Maas; the first degree murder of his brother, Donald Smith; and escape in the first degree. The jury was instructed on both premeditated and felony murder for the killing of Officer Maas, and on felony murder only for the killing of Donald Smith. The jury returned a verdict finding defendant guilty of the escape count and both felony murder counts and not guilty of the premeditated murder of Officer Maas. He appeals; we affirm.

## DISCUSSION

### 1. Felony Murder Instruction

Our felony murder statute, A.R.S. § 13–1105, provides in part:

A. A person commits first degree murder if:

.        .        .        .        .

2. Acting either alone or with one or more other persons such a person commits or attempts to commit ... escape under §§ 13–2503 or 13–2504 ... and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person.

Without objection, the trial court gave a standard instruction on felony murder, RAJI No. 11.052, as follows:

The crime of first degree felony murder requires proof of the following two things:

1. The defendant committed or attempted to commit escape in the first degree; and

2. In the course of and in furtherance of the crime or immediate flight from the crime, the defendant or another person caused the death of any person.

Reporter's Transcript of 7/30/86, at 1032–33. The trial court separately instructed the jury on the elements of the crime of escape.

On appeal, defendant contends the trial court erred by failing also to instruct the jury that a proximate, causal relationship has to exist between the defendant's conduct and the deaths charged in the indictment. Although defendant's trial counsel did not request such an instruction, his appellate counsel contends that the failure of the trial court to give such an instruction, *sua sponte*, was fundamental error depriving defendant of a fair trial.

■ Absent fundamental error, an objection to an error or omission in jury instructions must be raised at trial to preserve the issue on appeal. *State v. Axley*, 132 Ariz. 383, 392–93, 646 P.2d 268, 277–78 (1982). We have defined fundamental error in the context of jury instructions as "such error as goes to the foundation of the case, or which takes from the defendant a right essential to his defense." *State v. Thomas*, 133 Ariz. 533, 539, 652 P.2d 1380, 1386 (1982) (citing *State v. Evans*, 109 Ariz. 491, 493, 512 P.2d 1225, 1227 (1973)).

■ Defendant contends that his personal conduct did not cause the deaths of his brother and Officer Maas; therefore, defendant argues, the lack of a proximate cause instruction deprived him of a viable defense and constituted fundamental error. Defendant relies upon *State v. Wiley*, 144 Ariz. 525, 698 P.2d 1244 (1985), *overruled on other grounds, State v. Superior Court*, 157 Ariz. 541, 760 P.2d 541 (1988), and *State v. Lawson*, 144 Ariz. 547, 698 P.2d 1266 (1985), for his assertion that a felony murder charge requires a proximate cause instruction.

Wiley and Lawson were tried together for felony murder. They beat and robbed their victim and left him bound, hand and foot, in his home. Some hours later, a passerby noticed smoke coming out of one of the windows of the victim's home. The victim, still bound, died from smoke inhalation. A small lamp, placed underneath a mattress on the victim's bed, had started the fire. The trial court gave the standard felony murder instruction followed by these instructions:

In order to find the defendants guilty of first degree murder, you must find that the death was proximately caused by the acts of the defendants.

The proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred.

Proximate cause does not exist if the chain of natural effects and cause either does not exist or is broken by intervening events which were unforeseeable by the defendants.

Conduct is the cause of a result when both of the following exist:

(1) But for the conduct, the result in question would not have occurred.

(2) The relationship between the conduct and results satisfies any additional causal requirement imposed by the statute defining the offense.

*Wiley,* 144 Ariz. at 539–40, 698 P.2d at 1258–59.

The defendants in *Wiley* and *Lawson* argued that the fire was a "coincidence" or an "intervening cause" and requested the following additional instruction:

A coincidence exists when the defendant merely puts the victim at a certain place at a certain time and because the victim was so located it was possible for him to be acted upon by the intervening cause. When a coincidence exists as an intervening cause, and the coincidence was unforeseeable by the defendants then there is no proximate cause and the defendants must be found not guilty of homicide.

*Id.*

In discussing the instructions, the *Wiley–Lawson* prosecutor advised the judge that he would not argue that the binding of the victim itself was the proximate cause of his death; in fact, the prosecutor argued that, to convict, the jury would have to find that the defendants placed or left the lamp that caused the fire.

On appeal, Wiley and Lawson argued that the instructions were "ambiguous, conflicting and incomplete" without the addition of defendants' requested instruction on "coincidence" and "intervening cause." We rejected that argument and found nothing improper about the instructions as given. In doing so, we did not purport to hold that a definition of proximate cause must be given in every felony murder case.

In the case at bar, by convicting defendant of escape and felony murder, the jury clearly found that defendant committed the crime of escape and that the deaths occurred in furtherance of the escape. As the defendant himself concedes (Appellant's Opening Brief, p. 9), his "only defense was that he was surprised by his brother's actions and fled the scene to avoid being shot." At trial, there was no issue of causation; the issue that was tried and resolved against defendant was whether he participated in and was guilty of the crime of escape.

The RAJI instruction that was given without objection was based on the language of A.R.S. § 13–1105. It included the essential elements of felony murder. A "proximate cause" instruction would only have been an amplification of the cause element of felony murder. Under the circumstances of this case, there was no fundamental error in failing to *sua sponte* add to the instruction. *See State v. Stephens,* 93 N.M. 458, 462, 601 P.2d 428, 432 (1979) (no fundamental error in not giving *sua sponte* proximate causation instruction because jury was properly instructed on essential elements of felony murder).

Of course, in felony murder cases in which causation is in issue, a proximate cause instruction should be given if it would be helpful to the jury.

## 2. Prosecutor's Argument Concerning Felony Murder

During closing argument, the prosecutor, without objection, made the following comment:

As far as the application of the felony murder rule in this case, I really don't want to go into it too much more than I already have. I think I will just stick with what I have already indicated to you, that once you determine that Edward Smith escaped, all you have to do is fill in the blanks. It sounds like it is really just an exercise that follows automatically from finding escape, and in

fact it does. All you have to do when you look at that is fill in the blanks. Reporter's Transcript of 7/30/86, at 1026–1027.

No motion for mistrial or new trial was made on the basis of this comment. However, on appeal, defendant contends that the prosecutor's comment imposed "strict liability" on the defendant in violation of the court's instructions and the law.

We find no merit to this contention. First, defendant waived his challenge to this alleged improper comment by not objecting at trial, absent fundamental error. *State v. Inman*, 151 Ariz. 413, 417, 728 P.2d 283, 287 (App.1986). Under the facts of this case, we are inclined to view the remark as a fair characterization of the felony murder doctrine in Arizona. It is not, under any circumstances, fundamental error.

### 3. Defining "Knowingly" in First Degree Escape

■ Without objection, the trial court instructed the jury on the crime of escape as follows:

the crime of escape in the first degree requires proof that the defendant knowingly escaped or attempted to escape by using or threatening to use physical force or a deadly weapon against a person.

This instruction was based on the language of A.R.S. § 13–2504, escape in the first degree. After the instruction had been given and before jury deliberations began, the prosecutor mentioned to court and counsel that no instruction defining the term "knowingly" had been given. The trial judge asked defense counsel whether he wished such an instruction; defense counsel did not. Still, defendant on appeal claims the trial court committed fundamental error by not *sua sponte* defining "knowingly."

The record does not reveal whether defendant would have objected had the court

given the instruction; the record only reflects that defense counsel felt such an instruction unnecessary. We agree. Words that are used in their ordinary sense and are commonly understood require no definitional instruction to the jury. Here, "knowingly" falls into this category. *State v. Barnett*, 142 Ariz. 592, 691 P.2d 683 (1984) (failure to define "intentionally" as used in assault and aggravated assault statutes was not fundamental error). *See also* A.R.S. § 1–213.[1] Nothing in A.R.S. § 13–2504, or in the case law suggests that "knowingly" is used other than in its ordinary sense in the definition of the crime of escape. Defendant's contention that the trial court was required *sua sponte* to define "knowingly" pursuant to the language of A.R.S. § 13–105(6)(b) is not persuasive.

### 4. Ineffective Assistance of Counsel

Defendant claims that he was deprived of effective assistance of counsel at trial because of his trial counsel's failure to: (1) request a proximate cause instruction on felony murder; (2) object to the prosecutor's argument concerning felony murder; and (3) receive an instruction defining "knowingly."

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), and that the deficiency prejudiced his defense. *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984).

Because we have already determined that no prejudicial error occurred as a result of the three items challenged by appellate counsel, there is no merit to defendant's claim of ineffective assistance of trial counsel.

### 5. Change of Venue

In light of the pre-trial publicity that this trial received in Yuma County, defendant

---

1. A.R.S. § 1–213 provides: "Words and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have ac-

quired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."

requested a change of venue under Rule 10.3 of the Arizona Rules of Criminal Procedure. Defendant contended that almost all of the potential jurors had been exposed to some media coverage of the case and that he could not receive a fair trial in Yuma County. The trial judge, after examining the evidence submitted in support of the motion, including the newspaper articles concerning the case, denied the motion.

■ With respect to pre-trial publicity, no presumption of prejudice exists unless it is so pervasive and extensive that it creates a "carnival atmosphere." *State v. Chaney,* 141 Ariz. 295, 302, 686 P.2d 1265, 1272 (1984) (citing *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). Absent any such presumption, the party requesting a change of venue has the burden of proving that the publicity concerning the trial or crime will probably result in the party being deprived of a fair trial. Ariz.R.Crim.P. 10.3(b); *State v. LaGrand,* 153 Ariz. 21, 734 P.2d 563, *cert. denied,* —— U.S. ——, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

■ A trial court's decision whether to grant a motion for change of venue is discretionary and will not be disturbed absent a showing of abuse of discretion and prejudice to the defendant. *See State v. Chaney,* 141 Ariz. at 302, 686 P.2d at 1272. Here we find the trial judge was well within his discretion in denying the motion. By his order of June 18, 1986, the trial judge specifically stated that he had read the submitted articles and that defendant had not met his burden under Rule 10.3(b). The trial judge also specifically suggested that defendant could renew the motion for change of venue during the jury selection process, if necessary. The motion was not renewed during the jury selection process, and only three potential jurors were excused because of prior news coverage. Nor was the motion renewed at any later time during the trial. There was no error.

**6. Prosecutor's Remarks During Closing Arguments**

Defendant asserts that on two occasions in closing argument the prosecutor inserted his personal opinion concerning defendant's guilt into the case. In the first instance, the prosecutor, in discussing the crime of escape and how it relates to the felony murder doctrine, commented that:

> In fact this offense doesn't even require you to determine necessarily that Edward Smith was armed, that he had a deadly weapon. All it requires you to ask yourself are those two questions, did the defendant escape or attempt to escape, and during the course of and furtherance of that escape did the defendant Edward Smith or Donald Smith cause the death of Gary Maas. It is beyond me that there is any possible resolution to that question but yes.

Reporter's Transcript of 7/30/86, at 925.

■ The second occasion arose when the prosecutor questioned the defendant's explanation of his actions after the shooting:

> Now, the defendant's explanation, or should I say lack thereof, was at least, it left me totally unpersuaded. I think the evidence shows you that the reason he is not persuasive is that he is not telling you the truth.

*Id.* at 950.

Defendant's trial counsel made no objections to these comments at trial. Failure to object to closing arguments at trial waives the objection on appeal absent fundamental error. *State v. Cannon,* 148 Ariz. 72, 79, 713 P.2d 273, 280 (1985).

Defendant relies upon *State v. Filipov,* 118 Ariz. 319, 576 P.2d 507 (App.1977). In *Filipov,* the prosecutor argued that the jury should convict the defendant not by reason of the evidence, but because the state had worked so hard to bring him to trial. In finding reversible error in the prosecutor's remarks, the *Filipov* court was also swayed by the prosecutor's harangue, "He's guilty, guilty, guilty." *Id.* at 324, 576 P.2d at 512. This, the court found, went beyond arguing the evidence and evolved into a personal opinion of defendant's guilt.

The prosecutor's remarks in the case at bar fall far short of those uttered in *Filipov.* Although the prosecutor's second

comment injects his opinion to some extent, it basically attacks the defendant's credibility. Assuming, without deciding, that the remark was improper, it does not rise to the level of fundamental error.

For a prosecutor's remarks in closing argument to require reversal, it is necessary to determine that the remarks likely influenced the jury's verdict. *State v. King*, 110 Ariz. 36, 43, 514 P.2d 1032, 1039 (1973). We find no prejudice which warrants reversal.

## 7. "Inconsistent" Verdicts on the Felony Murder Count on Officer Maas

■ Without objection, the trial court submitted to the jury two forms of verdict with respect to the death of Officer Maas. One of the verdicts was for felony murder, the other was for premeditated murder. The jury found defendant guilty of the felony murder of the officer and not guilty of premeditated murder. Defendant did not object to the alternate forms of verdict at trial. On appeal, he argues that first degree murder, however arrived at, is one crime, that the verdicts are inconsistent, and as a result he is entitled to a new trial.

The verdicts are not inconsistent. The trial judge in this case properly submitted the alternative forms of verdict to the jury. In the past, we have held that it was not error to have one form of verdict for first degree murder even though both premeditation and felony murder were being submitted to the jury. *See, e.g., State v. Emery*, 141 Ariz. 549, 552, 688 P.2d 175, 178 (1984); *State v. Berndt*, 138 Ariz. 41, 44–45, 672 P.2d 1311, 1314–15 (1983); *State v. Encinas*, 132 Ariz. 493, 496–97, 647 P.2d 624, 627–28 (1982). In first degree murder cases, however, the potential of a death sentence is always present. Developments in the death penalty area have previously led two members of this court to suggest that it would be desirable to have both forms of verdict submitted to the jury. *State v. Walton*, 159 Ariz. 571, 592–594, 769 P.2d 1017, 1038–1040 (1989) (Feldman, V.C.J., and Moeller, J., concurring). The

trial court and this court would then know under which theory the jury convicted defendant of first degree murder. Of course, in an appropriate case, the jury could return a verdict of guilty of both premeditated and felony murder. Availability of such information would be of great benefit to the trial court and to the reviewing courts in determining death penalty questions under the *Enmund/Tison* analysis.[2]

Experience with the single form of verdict has also demonstrated that dual forms of verdict are desirable in reviewing cases on the guilt phase. For example, we were recently required to reverse a first degree murder case and remand for a new trial in a case where the jury's verdict did not tell us whether it was based on premeditated or felony murder. *State v. Lopez*, 158 Ariz. 258, 762 P.2d 545 (1988). In *Lopez*, the evidence failed to support the underlying felony so the murder conviction had to be set aside because it was unknown whether it was based on felony murder or premeditation. Only after a lengthy new trial was the defendant again convicted, this time based solely on a premeditation theory. Jury verdict filed April 11, 1989, Maricopa County CR–152231.

Thus, as a matter of sound administration of justice and efficiency in processing murder cases in the future, we urge trial courts, when a case is submitted to a jury on alternate theories of premeditated and felony murder, to give alternate forms of verdict so the jury may clearly indicate whether neither, one, or both theories apply.

## DISPOSITION

In addition to considering each issue raised by defendant, we reviewed the record for fundamental error pursuant to A.R.S. § 13–4035(B). We found none. Defendant's convictions and sentences are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

**2.** *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

HOLOHAN, J., participated in the determination of this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.