753 P.2d 1168

STATE of Arizona, Through the CRIMINAL DIVISION OF the ATTORNEY GENERAL'S OFFICE, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Daniel E. Nastro, a judge thereof, Respondent Judge,

Elden GARDNER, Real Party in Interest.

No. 1 CA–SA 025.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 22, 1987.

Review Granted May 12, 1987.

Robert K. Corbin, Atty. Gen. by Tim Holtzen Crim. Div., Dept. of Law, Asst. Atty. Gen., Phoenix, for petitioner.

Ross P. Lee, Maricopa County Public Defender by Mary Lynn Bogle, Deputy Public Defender, Phoenix, for real party in interest.

## OPINION

JACOBSON, Judge.

This special action filed by the state requires us to determine whether a prosecutor must disclose his reasons for the exercise of peremptory challenges used to strike two black veniremen from a jury panel. Because this is a matter of first impression in this state and is of statewide interest, we accept jurisdiction of the special action.

The state contends the trial court erred: (1) by determining that defendant real party in interest, a caucasian, has made a *prima facie* showing that the prosecutor engaged in purposeful discrimination; and, (2) by acting arbitrarily and capriciously and thus abusing his discretion in requiring the prosecutor to disclose reasons for striking the two black veniremen.

Elden Gardner, defendant real party in interest, was indicted on February 25, 1986 and charged with one count of leaving the scene of a fatal accident, a class 6 felony. His trial before respondent Judge Daniel E. Nastro began on September 24, 1986. Defendant is caucasian. He is being represented by a black attorney from the Office of the Public Defender.

During jury selection, the prosecutor exercised two peremptory challenges that resulted in the striking of the only two black veniremen present. The defendant objected to this use of the state's peremptory challenges. Based on the objection, a hearing was conducted in chambers at which Judge Nastro requested that the state disclose its reasons for the exercise of the peremptory challenges to exclude blacks from the panel. Judge Nastro based his request on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state refused to comply and sought special action relief in this court. The pro-

ceedings on stipulation were stayed pending our decision on the state's petition.

The state's argument is essentially two-fold. It first contends that defendant does not have standing to object to striking members of the jury panel who are not of the same race as the defendant. The state contends that *Batson, supra,* mandates that the defendant must first show that he is a member of a racial group capable of being singled out for differential treatment, and that the peremptory challenges at issue were exercised *against members of defendant's race.* Because defendant is white, it is urged, he has no standing to contend that his rights have been violated by the exclusion of blacks from the jury panel.

The second prong of the state's argument under *Batson* is that because defendant is white, the trial court abused its discretion in requiring the prosecutor to disclose reasons for the challenges because the defendant is unable to make a *prima facie* showing that the prosecutor is engaging in purposeful discrimination. We disagree with both arguments.

Prior to the decision in *Batson,* the law dealing with purposeful discrimination in the selection of jurors was defined by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Swain* required the defendant to demonstrate that the state systematically excluded an identifiable group from jury service. 380 U.S. at 224, 85 S.Ct. at 838, 13 L.Ed.2d at 775, see *State v. Wiley,* 144 Ariz. 525, 698 P.2d 1244 (1985). As a result, proof of the repeated striking of blacks over several cases was necessary to establish a violation by the state of the defendant's right to equal protection. *Batson, supra* at n. 10. This "evidentiary formulation" insulated the prosecutors' use of peremptory challenges from constitutional scrutiny. 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 84. Illustrative of this insulation is the Arizona Supreme Court decision in *State v. Wiley,* 144 Ariz. 525, 698 P.2d 1244 (1985), which held that absent a showing of systematic exclusion, there was no constitutional requirement that the trial judge investigate the prosecu-

tor's reasons for his exercise of peremptory challenges. 144 Ariz. at 537, 698 P.2d at 1256.

*Batson* overrules that portion of *Swain* which requires the showing of systematic exclusion. 476 U.S. at 91–93, 106 S.Ct. at 1720, 90 L.Ed.2d at 85. Other than a decision by the Court of Appeals, Division 2, which holds that *Batson* may not be applied retroactively, no Arizona appellate court has reviewed the substantive application of the *Batson* standard. Accordingly, the issues before us are of first impression.

■ We examine first the state's argument that a white defendant has no standing to object to the peremptory exclusion of black veniremen.

In our opinion the standing issue is controlled by *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (plurality opinion) where the United States Supreme Court first examined the problem posed by a white defendant's challenge to the exclusion of blacks from jury service. In *Peters,* decided under *Swain,* a white defendant alleged that blacks were being systematically excluded from the grand jury which indicted him, and from the petit jury which convicted him of burglary. The Court found that the race of the defendant did not preclude him from gaining standing to challenge the exclusion of blacks. *Peters* indicated that exclusion from jury service by the state of a "substantial and identifiable class of citizens" is antithetical to the notion that juries must represent the range of human nature and the variety of human experience. *See* 407 U.S. at 504, 92 S.Ct. at 2169, 33 L.Ed.2d at 95. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (male defendant held to have standing to challenge exclusion of women from jury service); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). To demonstrate this point, the Court held that:

[w]hatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race,

and thereby denies him due process of law.

407 U.S. at 504, 92 S.Ct. at 2169, 33 L.Ed.2d at 95.

■ The state bases its standing argument on the language in *Batson, supra,* which requires a defendant to be of the same race as the veniremen being excluded. In our opinion the "same class" language of *Batson,* goes not to the issue of standing (right to use the issue), but is directed only toward the establishment of a *prima facie* evidentiary case of purposeful discrimination. Thus, if the defendant and excluded veniremen are of the same race, a strong evidentiary inference may be drawn that *prima facie* purposeful discrimination has occurred and the burden thereby shifted to the state to explain its actions.

We are supported in this view by the *prima facie* burden of proof rules established in the "disparate treatment" cases under Title VII of the Civil Rights Act of 1964. *Batson, supra,* at n. 18. The seminal case is *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* held that the party alleging disparate treatment may make out a *prima facie* case by showing first that he or she is a member of a "racial minority." However, this premise is qualified in a footnote:

> [t]he facts necessary will vary in a Title VII case, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

*McDonnell Douglas Corp. v. Green, supra,* at n. 13.

The qualification was made law in *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) where white employees of the defendant were held to have made a *prima facie* case of racial discrimination, even though they were not members of a "racial minority." 427 U.S. at 278, 96 S.Ct. at 2578, 49 L.Ed.2d at 500. Referring with approval to the language cited above from *McDonnell Douglas,* the Court noted that:

> [r]equirement (1) of this sample pattern of proof was set out only to demonstrate how the racial discrimination could be established in the most common sort of case, and not as an indication of any substantive limitation of Title VII's prohibition of racial discrimination.

*McDonald v. Santa Fe Trail Transportation Co., supra,* at n. 6.

Given the continuing line of cases which reject the so-called "same class rule," we reject a reading of *Batson, supra,* that would require that defendant Gardner be of the same race as the stricken jurors to have standing to object.

■ We turn now to the second prong of the state's argument—that defendant is unable to make a *prima facie* showing that the prosecutor engaged in purposeful discrimination by his exercise of the peremptory challenges. Again, the state, in our opinion, mistakenly premises the argument on a reading of *Batson* that requires the defendant to be of the same race as the excluded veniremen.[1] Petitioner relies on the language in *Batson* which states that to establish a *prima facie* case of purposeful discrimination in selection of the petit jury:

> the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87.

We agree, as evidenced by our previous discussion, that the above quoted language provides the trial judge with a strong basis for finding a *prima facie* case of purposeful discrimination. We do not agree that this "same-class" criteria is the exclusive test to determine whether purposeful discrimination has occurred. In *Batson,* the

---

**1.** *But see Pope v. State,* 256 Ga. 195, 345 S.E.2d 831 (1986); *State v. Christensen,* 720 S.W.2d 738 (Mo.App.1986). Both *Pope* and *Christensen* hold that a white defendant cannot establish a *prima* *facie* case if not a member of a cognizable racial group. For the reasons discussed in this opinion, we refuse to follow these cases.

Supreme Court indicated that the trial judge, in addition to the "same class" factor, was to consider "any other relevant circumstances [which] raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.*, 106 S.Ct. at 1723. *See Clark v. City of Bridgeport,* 645 F.Supp. 890 (D.Conn.1986); *Wilder v. State,* 498 N.E.2d 1295 (Ind.App.1986).

■ From our reading of *Batson,* it is clear that the initial burden is upon the trial judge to make the discretionary determination as to whether there is sufficient evidence of purposeful discrimination in the peremptory striking of veniremen to require explanation by the prosecution for its actions. 476 U.S. at 96–98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. In this regard, the Court stated:

> [i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenge may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's peremptory challenges creates a *prima facie* case of discrimination against black jurors.

476 U.S. at 96–97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

■ Given the broad discretion afforded the trial judge in these circumstances, we find neither arbitrary or capricious action by the respondent trial judge, nor any abuse of his discretion. We, of course, express no opinion as to whether any explanation of the prosecution for its actions would justify a nonracial reason for the exercise of the peremptory challenges in this case. Accordingly, we exercise our discretion in granting jurisdiction of this special action, but deny relief. The stay previously issued in this matter is vacated.

MEYERSON, P.J., concurs.

SHELLEY, Judge, dissenting:

I respectfully dissent. In my opinion, a white defendant normally does not have standing to contest the use of peremptory challenges to strike the only blacks from a jury. However, because this defendant is represented by a black attorney, the fact situation is sufficient to satisfy the principles set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The majority mistakenly holds that the standing issue is controlled by *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed. 2d 83 (1972). In that case, peremptory challenges were not involved. The case involved the systematic exclusion of blacks from being initially drawn for grand and petit juries. In *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the jurors were excluded from the venire. Peremptory challenges were not involved.

*Batson* makes it clear that the prosecutor's historical privilege of peremptory challenges should be as free from judicial control as possible. This right is deeply rooted and comes from common law. *Batson* held that if a prosecutor was required to explain his reasons for exercising peremptory challenges, that explanation did not need to rise to the level justifying challenge for cause. The question to be determined was whether the peremptories made were based solely on the prosecutor's intuitive judgment that they would be partial to the defendant because of their *shared race.* The *Batson* case held:

> The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain.* These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of per-

emptory challenges at the defendant's trial. To establish such a case, the defendant *first* must show that *he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.*

\* \* \* \* \* \*

But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant *because of their shared race.* (Emphasis added—citations omitted)

476 U.S. at 96–98, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87–88.

In the case of *Phillips v. State,* 496 N.E.2d 87 (Ind.1986), the Indiana Supreme Court, referring to *Batson,* stated:

To establish such a case, appellant must show: 1) he is a *member* of a cognizable racial group; 2) the prosecutor has exercised peremptory challenges *to remove that group's members from his jury;* and 3) the facts and circumstances of his case raise an inference the exclusion was based on race. *Batson, supra.* Once appellant has made a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The prosecutor's explanation need not rise to the level of a challenge for cause. The trial court will then have the duty to determine whether appellant has established purposeful discrimination. (Emphasis added)

*Id.* at 89.

*Phillips* interprets *Batson* to require that the defendant must be a member of a cognizable racial group and that the prosecutor has exercised challenges to remove that group's members from his jury.

In *State v. Jackson,* 317 N.C. 1, 343 S.E.2d 814 (1986), the court interpreted *Batson* as follows:

The Court stated that in order to establish such a *prima facie* case, the defendant must *first* show that he is a member

of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire *members of the defendant's race;* second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that lends itself to potential abuse; and third, the defendant must show that these facts and any other relevant circumstances (e.g., a pattern of strikes against black jurors in a particular voir dire, questions and statements by the prosecutor during voir dire, etc.) raise an inference that the prosecutor used peremptory challenges to exclude prospective jurors on the basis of race. (Emphasis added)

*Id.* at 11–12, 343 S.E.2d at 820.

The reasoning in *Phillips* and *Jackson* is entirely consistent with the holding in *Batson.*

The majority states:

The state bases its standing argument on the language in *Batson, supra,* which requires a defendant to be of the same race as the veniremen being excluded. In our opinion the "same class" language of *Batson,* goes not to the issue of standing (right to use the issue), but is directed only toward the establishment of a *prima facie* evidentiary case of purposeful discrimination. Thus, if the defendant and excluded veniremen are of the same race, a strong evidentiary inference may be drawn that *prima facie* purposeful discrimination has occurred and the burden thereby shifted to the state to explain its actions.

I disagree. *Batson* clearly states unequivocally that the defendant *first* must show that he is a member of a cognizable racial group and second that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The foregoing is the threshold requirement. If the first requirement is not met, then it is not necessary to consider the remaining two requirements specified in *Batson.*

The United States Supreme Court cases cited by the majority are all pre-*Batson*

**518**

determinations. *Batson* is therefore controlling on this issue.

The cases cited by the majority involving U.S.C. Title VII are inapposite, inasmuch as they involve statutory interpretation and not constitutional rights.

A defendant has the right to have an attorney of his choosing, or if indigent, a right to have an attorney appointed by proper authorities. Since this defendant has a black attorney to present his case to the jury, the principles of *Batson* apply to this defendant as if he were black. He has standing to contest the use of peremptory challenges.

The majority states that under *Batson,* the initial burden is upon the trial judge to make his discretionary determination "as to whether there is sufficient evidence of purposeful discrimination in the peremptory striking of veniremen to require explanation by the prosecution for its actions." The majority quotes the following from *Batson:*

> [i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenge may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's peremptory challenges creates a *prima facie* case of discrimination against black jurors.

We are therefore required to look at the relevant circumstances including voir dire to determine whether or not the trial court abused its discretion in finding that an inference of discrimination was raised sufficient to require the prosecutor to give an explanation. In this connection, the record shows the following statement by the trial court referring to one of the two black jurors stricken: "I know he did say, I believe he had a past history, a felony for aggravated assault, or assault, and probation and if my memory serves me correct, he said it was five years ago." The court further stated: "Since both were black, I necessarily have to ask as to both blacks."

It is clear that the trial court made this ruling solely on the basis of the racial exclusion by peremptories without taking into consideration the circumstances revealed on voir dire. In my opinion, the trial court abused its discretion in requiring the prosecutor to respond with respect to the striking of this one juror.

I find no abuse of discretion in requiring the prosecutor to give the reason for striking the other black juror. The judgment of the trial court should be affirmed with respect only to requiring an explanation with regard to one black juror.