823 P.2d 1323

**STATE of Arizona, Appellee,**

v.

**Kimberly Jean BOSTON, Appellant.**

**No. 1 CA–CR 89–1273.**

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 5, 1991.

Petition and Cross–Petition for Review Denied Feb. 19, 1992.

As Corrected Feb. 25, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The defendant, Kimberly Boston, was found guilty of possession of narcotics, a class 4 felony, and was sentenced to a mitigated term of two years imprisonment. On appeal, she argues that the trial court abused its discretion in accepting the prosecution's stated reason for exercising a peremptory challenge to remove a Hispanic member of the venire. The prosecutor said he struck the Hispanic woman from the panel because she had only a ninth grade education. We hold that given the nature of this case, it was an abuse of discretion to allow the peremptory challenge without a further attempt to determine whether the Hispanic woman's lack of education would somehow limit her ability to follow the proceedings and decide this particular case on a rational basis.

A trial judge's findings on the issue whether the state has exercised a peremptory challenge with discriminatory intent are entitled to great deference. *Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). It is with the greatest reluctance that we differ with the trial judge in this case. We do so because the prosecution failed to fully meet its burden in responding to the allegations that the state abused the use of its peremptory strike.

### FACTS

The factual and procedural history of the case is as follows. Two Phoenix policemen were investigating a truck parked at a motel when they observed a man, Ginetto Castro, walking toward the truck. When Castro saw the police, he ran to his motel room. One of the policemen knocked on the door of the motel room, and Castro let him in. Upon entering, the officer saw the defendant, Kimberly Boston, flushing the toilet, and he saw an empty hypodermic syringe in the toilet bowl. Shortly after that, the defendant and Castro were sitting at a table, and Castro was playing with a hunting knife. In securing the knife, an officer bumped a ceramic tile that was on the table, revealing some small packets of heroin. Both the defendant and Castro were arrested.

During jury selection, the defendant's attorney objected to the state's peremptory strike of an Hispanic woman from the jury panel. The entire exchange on the issue was this:

MR. NOLAND: My client is part Hispanic and Miss Scott struck the only Hispanic juror on the available panel, number 23. And it is in issue.

THE COURT: Can you give me the name of the juror?

MR. NOLAND: Betty Martinez.

MS. SCOTT: My reason was that she only has a ninth grade education.

MR. NOLAND: Beyond that I cannot get into Miss Scott's mind. I simply say that looking at the papers that we were provided it is difficult to tell what education these people have. They write down information but not really a lot. The argument is that it is not sufficient.

THE COURT: I find that the reason stated is sufficiently acceptable and is not inappropriate and I will allow it at this time.

### THE PEREMPTORY CHALLENGE

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court outlined a three-step process for evaluating a claim that the state has used a peremptory challenge in a manner which violates the equal protection clause. First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. Second, if that showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. Third, the trial court must determine whether the defense has carried its burden of proving purposeful discrimination. *See also Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (Plurality).

■ *Batson*, among other things, requires that the prosecutor's response contain two elements: first the explanation for

the strike must be race neutral. Secondly, the explanation must be related to the particular case to be tried. *See* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Other decisions recognize that very point. *See People v. Wheeler,* 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978); and *People v. Hall,* 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854 (1983).

■ Although the prosecutor offered a reason for striking the only Hispanic member of the panel that was race neutral on its face, she failed to state why an education beyond the ninth grade was of significance in this case. We do not believe that the trial court's cursory consideration of the matter established that the prosecutor's reason was material to anything having to do with the case to be tried. Accordingly, we conclude that the state failed to rebut the defendant's prima facie showing that the strike was exercised on the basis of race, and, thus, the trial court erred in permitting the peremptory challenge.

This case was a simple one involving few elements and no technical evidence. There is no reason to believe that the Hispanic woman who was struck from the jury was not intelligent or that she would have any problem following the proceedings. Rather, the record suggests the opposite. The woman had no difficulty following the court's direction in providing information requested on voir dire, and she had worked for five years in customer service for a large department store.

We do not hold that a lack of education can never be a legitimate reason for the use of a peremptory challenge. In some cases, the desirability of having well-educated people on the jury will be self-evident. *See, e.g., United States v. Tucker,* 773 F.2d 136 (7th Cir.1985). However, the correlation between a person's level of education on the one hand, and their intelligence and common sense on the other, is not so clearly established as to automatically justify the removal of a minority member of limited education in a case like this one. Too, the exercise of a strike for reasons of lack of education is apt to have a disparate impact on members of a racial minority and can easily serve as a pretext for purposeful discrimination. *See* Serr and Maney, "Racism, Peremptory Challenges, and The Democratic Jury: The Jurisprudence of a Delicate Balance," 79 J.Crim.L. & Criminology 1, 55 (1988). For these reasons, we recommend the practice suggested by the Texas Court of Appeals in *Chivers v. State,* 796 S.W.2d 539 (Tex. App.1990): that is, where something about a prospective juror suggests that he or she might not have the ability to follow the proceedings, the court or counsel should address individualized questions to the prospective juror to shed more light on that person's suitability.

We have tried to survey every case which discusses, or even alludes to, a lack of education as a reason for the exercise of a peremptory challenge. Only two of them hold that a lack of education alone will support a peremptory challenge of a member of the venire who is a member of a racial minority. In one of these, *United States v. Harrell,* 847 F.2d 138 (4th Cir. 1988), the court ruled to that effect without discussion. Of the other, *Winfield v. Commonwealth,* 404 S.E.2d 398 (Va.App.1991) (Judge Coleman dissenting), it is enough to say that we find the dissent more persuasive than the majority opinion.

In four of the other cases we have found, a lack of education was only one of several legitimate reasons for the peremptory challenge. *See United States v. Ross,* 872 F.2d 249 (8th Cir.1989); *United States v. Cartlidge,* 808 F.2d 1064 (5th Cir.1987); *Lockett v. State,* 517 So.2d 1346 (Miss.1987); and *People v. Cartagena,* 128 A.D.2d 797, 513 N.Y.S.2d 497 (1987). In two others, the proposition that a peremptory challenge because of a lack of education was permissible, was mere dicta. *See Garrett v. Morris,* 815 F.2d 509 (8th Cir.1987); and *State v. Tomlin,* 299 S.C. 294, 384 S.E.2d 707 (1989).

### JURY INSTRUCTION

Although the police officer testified that he saw a syringe in the toilet bowl, apparently no attempt was made to retrieve and preserve it. The defendant argues that the

**318**

trial court erred by refusing the defendant's request for the following instruction:

> If you find that the state has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against the state's interest.

*See State v. Willits*, 96 Ariz. 184, 187, 393 P.2d 274, 276 (1964).

■ A defendant is entitled to a *Willits* instruction if (1) the state failed to preserve accessible material evidence that might have had a tendency to exonerate the defendant, and (2) there was resulting prejudice. *State v. Hansen*, 156 Ariz. 291, 295, 751 P.2d 951, 955 (1988). Absent an abuse of discretion, we will not reverse a trial court's decision on whether to give a *Willits* instruction. *Id.*

■ The production of the syringe would have tended to prove the defendant guilty, rather than to exonerate her. The state's failure to produce the syringe coupled with the testimony of the two police officers, one of whom saw the syringe and the other who did not, probably weighed in the defendant's favor. Nothing precluded the defendant from arguing that if the syringe had really existed the police would have retrieved it, preserved it, and that the prosecutor would have moved its admission. The circumstances, however, simply do not warrant a *Willits* instruction.

Accordingly, we reverse and remand this case for a new trial.

TAYLOR, P.J., and VOSS, J., concur.