828 P.2d 786

**STATE of Arizona, Appellee,**

v.

**Walter Raymond JORDAN, Jr., Appellant.**

**No. 1 CA–CR 90–606.**

Court of Appeals of Arizona, Division 1, Department E.

March 26, 1992.

Review Denied Sept. 16, 1992.

---

Grant J. Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Div., and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

TAYLOR, Judge.

Walter Raymond Jordan, Jr. ("defendant") timely appeals his convictions and sentences for two counts of kidnapping and two counts of first degree murder. For the reasons stated below, we affirm the convictions and the sentences as modified herein.

## PROCEDURAL HISTORY

Defendant was indicted on two counts of kidnapping and two counts of first degree murder. Each murder count alleged premeditation and that the homicide occurred in the commission of a felony. The State also filed a sentencing-enhancement allegation of dangerousness. Following a jury trial, defendant was convicted on two counts of first degree murder under a felony murder theory and two counts of kidnapping, class 2 dangerous offenses. Defendant received consecutive life sentences on the first degree murder convictions. Defendant also received consecutive aggravated twenty-one-year sentences on the kidnapping convictions, with these sentences to be served concurrently with the life sentences. Defendant filed a timely notice of appeal.

## FACTS

On the evening of June 5, 1989, defendant, his brother Chris Jordan ("Chris"), and Frank Lewis ("Lewis"), were drinking at the Westward Tavern Bar in Phoenix, Arizona. Doris McCleese ("McCleese") was a bartender there and a friend of all three men. Defendant and Chris were temporarily living in her trailer. Also at the bar that evening were the victims, William Kerr ("Kerr") and Bob Hawley ("Hawley").

According to testimony presented at trial, Hawley made a derogatory remark about McCleese and a fight ensued. Defendant, Chris, and Lewis squared off against Kerr and Hawley. The latter two were knocked to the floor and then hit, kicked, and stomped by the other three. The testimony is somewhat conflicting regarding the subsequent events.

Rose Wright ("Wright"), a bar patron, testified that defendant obtained a rope from his truck and that the hands and feet of Kerr and Hawley were tied. Chris and Lewis dragged the victims by their feet from the bar to defendant's truck. She also testified that defendant gave a knife to Chris and told him to cut Hawley's throat if he moved. According to Wright, defendant then told her, "You don't know me and you didn't see nothing." She testified that defendant and Chris exchanged T-shirts because Chris's shirt was bloody. Defendant then went back into the bar to talk to McCleese. When Wright left, Lewis and Chris were gone as well as defendant's truck. Wright testified, however, that defendant was still in the bar.

McCleese testified that during the fight, defendant went to get the rope from his truck but did not use it to tie up Kerr and Hawley. She said that Lewis dragged the victims to the truck by their feet. She stated she did not see a knife in the bar that evening. She also testified that after defendant and Chris exchanged T-shirts, Chris stayed in the bar with her while defendant and Lewis left in the truck. When the two returned to the bar about an hour later, defendant told her that the victims throats were cut and that Kerr had been hit in the head with a tire iron. She further testified that defendant threatened to kill her if she reported the crimes.

The two victims were found in a canal on lower Buckeye Road. Blood samples taken from the back of defendant's pickup truck and the tire iron found in the truck matched the blood types of the victims. The medical examiner determined that the cause of death for both victims was multiple stab wounds.

Detective Shorts of the Maricopa County Sheriff's Department interviewed defendant after he was arrested and given *Miranda* warnings. Defendant admitted being involved in the brawl but said that at the end of the fight the victims walked out of the bar. Defendant raises the following issues on appeal:

1. Did the court err in finding that defendant failed to make a *prima facie*

case that the State's peremptory strike of an Oriental juror had a discriminatory purpose?

2. Did the trial court err in admitting certain photographs of each victim?

3. Is defendant entitled to presentence incarceration credit?

## DISCUSSION

*Peremptory Strike of Minority Juror*

A prospective juror on the venire was of Asian descent. The State used a peremptory challenge to strike her from the jury panel. Defendant, a white male, objected, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and requested that the court require the State to explain the basis for its strike. The court denied the request, inviting defendant to make a motion meeting the requirements of *Batson* when he had "a legal basis, a legal justification" for doing so. The court further stated: "[U]nder the circumstances of this case, I do not find that there is a reasonable basis for believing that the exercise of the peremptory challenge was in any way or might reasonably be considered to have been in any way related to the race of the juror."

On appeal, defendant argues that the court erred by not requiring the prosecutor to identify race-neutral reasons for the peremptory strike. Defendant argues that this denial violated the Equal Protection Clause of the Fourteenth Amendment and the defendant's right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution. The State responds with two arguments. First, the juror was not from a "cognizable" group under *Batson*. Second, the defendant failed to present a *prima facie* case of purposeful discrimination.

In *Batson*, the Supreme Court held that the equal protection clause forbids the State from excluding potential jurors from a jury panel for racially discriminatory reasons. *Id.* at 89, 106 S.Ct. at 1719. A defendant alleging impermissible exclusion, however, must first make a *prima facie* showing of purposeful racial discrimina-

tion. *Id.* at 93, 106 S.Ct. at 1721. To establish a *prima facie* case,

the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* at 96, 106 S.Ct. at 1723 (citations omitted). Upon this requisite showing, the burden shifts to the State to come forward with a racially neutral explanation for the exclusion. *Id.* at 97, 106 S.Ct. at 1723.

■ The Supreme Court expanded *Batson* in *Powers v. Ohio*, — U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers*, the court held that under the Equal Protection Clause of the Fourteenth Amendment, a defendant may object to exclusion of jurors for a discriminatory purpose whether or not there is racial identity between the defendant and the excused juror. *Id.* Prior to the *Powers* decision, our supreme court held in *State v. Superior Court*, 157 Ariz. 541, 545, 760 P.2d 541, 545 (1988) that the trial by jury clause of the Sixth Amendment bars the state from using a peremptory challenge to "discriminatorily" exclude any substantial and identifiable class of citizens from jury service, even if the defendant and the excused jurors are of different races. *Accord State v. Reyes*, 163 Ariz. 488, 490, 788 P.2d 1239, 1241 (App.1989). Under the equal protection analysis of *Batson*, defendant may object to the prosecutor's peremptory

strike, despite the racial difference between himself and the stricken juror.

The initial inquiry for a *prima facie* showing is whether the prospective juror is a member of a cognizable racial group. *Batson* at 94, 106 S.Ct. at 1721–22. The holding of *Batson* applies to all ethnic and racial groups. *United States v. Bucci*, 839 F.2d 825, 833 (1st Cir.), *cert. denied*, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988). Cognizable or identifiable racial groups are those which have historically been subjected to discriminatory treatment and have from time to time required aid from the courts in securing equal treatment under the law. *See id.; Hernandez v. Texas*, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). Applying the equal protection analysis of *Batson*, we believe that a person of Asian descent is a member of a cognizable racial group.[1] *See Kline v. State*, 737 S.W.2d 895, 899 (Tex. Ct.App.1987) (person of "oriental extraction" is a member of cognizable racial group under *Batson*).

Our supreme court has stated that "[a] defendant alleging a *Batson* violation must make out a prima facie case of purposeful discrimination." *State v. Bailey*, 160 Ariz. 277, 281, 772 P.2d 1130, 1134 (1989). The standard required to constitute a prima facie showing of purposeful discrimination has experienced dramatic evolution since *Batson*. However, some minimal *nexus* between the peremptory strike and the juror's race has been required. In setting forth the three-step process for evaluating a claim of peremptory discrimination, this court has recently stated the following:

> First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge *on the basis of race*. Second, if that showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. Third, the trial court must determine whether the defense has carried its burden of proving purposeful discrimination.

*State v. Boston*, 170 Ariz. 315, 823 P.2d 1323 (App.1991) (emphasis added).

Thus, in order to make a *prima facie* case of purposeful discrimination, defendant must show, *inter alia*, facts and other relevant circumstances sufficient to raise an inference that the prosecutor used a peremptory strike to exclude a juror solely on account of race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723.

We have reviewed the *voir dire* examination and find nothing to suggest a discriminatory purpose by the State. We cannot discern from the record the racial makeup of the jury as impaneled. We do note, however, that at least one juror of Hispanic surname was on the panel. We do not find that the defendant has carried his burden of showing a *prima facie* case of purposeful discrimination. *See State v. Holder*, 155 Ariz. 83, 87, 745 P.2d 141, 145 (1987). The burden of proof under *Batson*, therefore, did not shift and the State was not required to identify race-neutral reasons for its peremptory challenge.

### *Admission of Photographs*

Photographs of the victims' corpses were taken by a sheriff's department detective when they were removed from the canal. The State moved to introduce the photos into evidence and defendant objected. The court deferred ruling on their admission until after the medical examiner testified, when it then allowed the photographs into evidence. Defendant contends this was error, arguing the photographs were gruesome and inflammatory and that their prejudicial effect outweighed their probative value. We disagree.

The decision of the trial court to admit photographic evidence is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Stabler*, 162 Ariz. 370, 374–75, 783 P.2d 816, 820–21 (App.1989). To determine whether a photograph is admissible, the trial court must first find that it is relevant

---

1. *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (applying the equal protection clause to protect the rights of Chinese aliens).

to an issue in the case. *State v. Bailey*, 160 Ariz. 277, 280, 772 P.2d 1130, 1133 (1989). The court must then determine whether the photographs would tend to inflame the jury or incite passion, and if so, whether the danger of unfair prejudice created by their admission outweighs their probative value. *Id.*

Various purposes have been identified to admit photographs. These include identifying the victim, proving *corpus delicti*, showing the location and nature of a fatal injury, determining the degree of the crime, explaining or illustrating testimony, corroborating the testimony of the state's witnesses, and corroborating the state's theory of why and how a homicide was committed. *State v. Moorman*, 154 Ariz. 578, 586, 744 P.2d 679, 687 (1987). In this case, the investigating detective and the medical examiner testified about the injuries sustained by the victims and how the photographs in question accurately portrayed those injuries. The photographs served to illustrate and explain their testimony.

Defendant argues that because identity and cause of death were not in dispute, the photographs had no probative value. However, where photographs are used to prove premeditation, they may be admissible, even if defendant stipulates to identity and cause of death. *See State v. Clabourne*, 142 Ariz. 335, 343, 690 P.2d 54, 62 (1984). Because premeditation and the degree of the offenses were issues in the case, we find no error in the admission of the photographs.

*Presentence Incarceration Credit*

At sentencing, defendant was not credited pursuant to A.R.S. § 13–709(B) with 309 days of prior incarceration. The State concedes that defendant is entitled to this presentence credit. We have authority pursuant to A.R.S. § 13–4037 to grant the requested correction. Accordingly, the sentence is modified to give defendant credit on counts II and IV for 309 days of presentence incarceration.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. We affirm the judgments of conviction and the sentences as herein modified.

VOSS, J., concurs.

KLEINSCHMIDT, Judge, concurring:

I believe that the majority correctly applies the existing law to the facts of this case. I write separately because in my opinion the prima facie showing required by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to trigger an inquiry into the use of a peremptory challenge sets up too high a hurdle to the eradication of racial discrimination in the administration of justice. Although I know of no Arizona case which deals directly with the challenge raised by this defendant, I recognize that the *Batson* formula for deciding when a prima facie showing of discrimination has been made has been adopted in this state. *See State v. Superior Court*, 157 Ariz. 541, 546, 760 P.2d 541, 546 (1988), which approves of how the court of appeals analyzed the prima facie showing in *State v. Superior Court*, 156 Ariz. 512, 515, 753 P.2d 1168, 1171 (App. 1987).

Were I free to do so, I would adopt a different rule. I think that when any party to any action exercises a peremptory challenge to remove a member of a cognizable group from the venire, or excludes a member of such a group by failing to use its peremptory challenges, that party should be required to explain the reason for its actions.[2]

I recognize that the rule I suggest would create additional practical problems in the

---

2. There is no reason to differentiate between the use and the non-use of peremptory challenges in considering whether the state is acting in a discriminatory manner. *State v. Scholl*, 154 Ariz. 426, 743 P.2d 406 (App.1987). Principles of equal protection preclude the defendant, as well as the state, from using peremptory challenges for discriminatory purposes. *United States v. De Gross*, 913 F.2d 1417 (9th Cir.1990), *reh'g granted*, 930 F.2d 695 (1991).

enforcement of *Batson.* If time and experience prove that the practical problems of eradicating racial discrimination in jury selection are insurmountable, I, for the reasons expressed by Justice Marshall in *Batson,* would prefer to do away with peremptory challenges altogether.