889 P.2d 629

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable B. Michael Dann, a judge thereof, Respondent Judge,

Mario MENDEVIL, Jose Fernando Vega-Vasoco, Real Parties in Interest.

No. 1 CA–SA 94–0310.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 7, 1995.

---

* The Honorable Michael J. O'Melia, Judge of the Superior Court of Maricopa County, was authorized by the Chief Justice to participate in this appeal pursuant to Ariz. Const. art. VI, § 3.

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels, Deputy County Atty., Phoenix, for petitioner.

Carmen L. Fischer, Phoenix, for real party in interest Mario Mendevil.

## OPINION

McGREGOR, Presiding Judge.

In this special action the State, joined by defendant Mendevil, asserts that the trial judge abused his discretion by requiring both the defendant and the State to give reasons for all peremptory strikes, without requiring any *prima facie* showing of purposeful discrimination and absent objection by the opposing party. For the reasons stated below, we accept jurisdiction and grant relief.

### I.

The State filed criminal charges against the Real Parties in Interest, Mario Mendevil and Jose Fernando Vega–Vasoco. In October 1994, the State, aware that this trial judge routinely requires both sides to explain their reasons for exercising every peremptory strike, moved to exercise peremptory strikes without explanation. The trial judge denied the State's motion and issued a written memorandum detailing his reasons for requiring both parties to explain each peremptory strike. The State then sought unsuccessfully to obtain a stay from the trial court and this court.

As anticipated, during jury voir dire, the trial judge required counsel for both the State and defendant Mendevil[1] to explain each peremptory strike, although neither party made, or attempted to make, a showing of purposeful discrimination related to any of the challenges. The State exercised one peremptory strike, and defendant exercised six. The trial judge allowed all the peremptory

---

1. Real Party in Interest Vega–Vasoco entered a plea agreement prior to jury selection.

strikes. The trial proceeded, and the jury convicted defendant of one lesser included offense.

We accepted jurisdiction over this special action because this case presents an issue that would repeatedly elude review, and the State has no equally plain, speedy, and adequate remedy by appeal.[2] Arizona Rules of Procedure for Special Actions 1(a).

## II.

Beginning with its decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and most recently in *J.E.B. v. Alabama*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court established that, under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, neither the State nor a defendant[3] can use peremptory challenges to exclude jurors because of their race (including ethnic background or national origin) or gender. The Court articulated a three-step process for giving effect to its policy:

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (citations omitted). The Court has never retreated from the requirement that the party exercising the strike needs to articulate a non-discriminatory reason only after the objecting party makes a showing of purposeful discrimination. The Arizona Supreme Court likewise has held that a party alleging a *Batson* violation must establish a *prima facie* case of discrimination. *State v. Bailey*, 160 Ariz. 277, 281, 772 P.2d 1130, 1134 (1989); *see also State v. Jordan*, 171 Ariz. 62, 66, 828 P.2d 786, 790 (App.1992) (discussing the supreme court's requirement that a *prima facie* case be shown); *State v. Boston*, 170 Ariz. 315, 316, 823 P.2d 1323, 1324 (App.1992) (stating that a *prima facie* case must be shown).

■ Although the burden of presenting a *prima facie* case of discrimination is not great, *Batson* requires the party challenging a peremptory strike to show that relevant circumstances raise an inference of a discriminatory purpose.

[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.[4] Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors . . . raises the necessary inference of purposeful discrimination.

---

**2.** Defendant Mendevil also argues that the trial court's procedure requiring him to justify each peremptory strike entitles him to a new trial. Because defendant can raise this argument on appeal, we do not consider or express any opinion on the merits of the argument.

**3.** The Court held in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) that a criminal defendant, like the State, is pre-

vented from exercising a peremptory challenge in a discriminatory manner.

**4.** The United States Supreme Court and Arizona Supreme Court later eliminated the requirement of a racial identity between the defendant and the excused juror. *See Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Jordan*, 171 Ariz. at 65, 828 P.2d at 789; *State v. Superior Court*, 157 Ariz. 541, 760 P.2d 541 (1988).

**274**

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).

Requiring the challenging party to comply with the first step of the *Batson* analysis is not intended to be a meaningless exercise. "[A] party alleging [racial or] gender discrimination *must make* a prima facie showing of intentional discrimination *before* the party exercising the challenge is required to explain the basis for the strike." *J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1429 (emphasis added). This court also has attached significance to a party's failure to make the required showing. In *Jordan,* the defendant appealed when the trial court failed to require the prosecutor to identify a race-neutral reason for using a peremptory strike. 171 Ariz. at 65, 828 P.2d at 789. This court affirmed the trial court's ruling because the defendant had failed to meet his burden of establishing a *prima facie* showing of discrimination.

 Our adherence to requiring an initial showing of discrimination reflects our recognition of the importance of peremptory challenges in the jury selection process. Although the right to exercise peremptory challenges is not protected by either the federal or the state constitution, such challenges have long been viewed as one means to assure the selection of a qualified and unbiased jury. *See Batson,* 476 U.S. at 91, 106 S.Ct. at 1720; *State v. Thompson,* 68 Ariz. 386, 390, 206 P.2d 1037, 1039–40 (1949). We regard the right as "a substantial rather than a mere procedural or technical right [that] should be fully enforced as an aid in securing an impartial jury." *Thompson,* 68 Ariz. at 390, 206 P.2d at 1039. Indeed, the exercise of peremptory strikes "is considered one of the accused's most important rights." B. Serr and M. Maney, *Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance,* 79 J. OF CRIM.L. & CRIMINOLOGY 1, 11 (1988).

 Requiring the striking party to explain a peremptory challenge absent an inference of discriminatory purpose would undermine the purpose of the peremptory chal-

lenge. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965); *see also Thompson,* 68 Ariz. at 390, 206 P.2d at 1039 (peremptory challenge is an arbitrary and capricious species of challenge). The trial court cannot pass over this step in hopes of making voir dire more efficient. *See* Serr & Maney, *supra,* at 41 (discussing the requirement that a *prima facie* case be shown and the effects of eliminating the requirement).

The reasons for striking a juror peremptorily are as varied as litigants and their counsel. Often trial attorneys may not be able to state an express reason for a peremptory challenge: their "judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses" instinctively derived from looks, gestures, or responses at voir dire. *J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1431 (O'Connor, J., concurring). Requiring an explanation for every peremptory challenge may discourage some attorneys from exercising their peremptory strikes out of concern that they will be unable to articulate a reason to justify the strike. *Id.* Lawyers also may be reluctant to divulge their reasons because of concern about revealing a portion of their trial strategy or, as occurred in this case, due to concern about revealing a client confidence.[5] A defendant may be relieved that the State peremptorily strikes a juror about whom the defendant had concern, thereby preserving the defendant's strikes for other jurors. Demanding an explanation for *every* peremptory challenge without a *prima facie* showing of discrimination makes the peremptory challenge less discretionary and more like a challenge for cause. *J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1431 (O'Connor, J., concurring). *But see id.* at ——, 114 S.Ct. at 1430 ("When an explanation is required, it need not rise to the level of a 'for cause' challenge[.]"); *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723 (noting

---

5. Defendant Mendevil's lawyer refused to explain two peremptory challenges, asserting doing so would require her to reveal confidential communications. The trial judge permitted exercise of the challenge without requiring explanation in those two instances.

that the State's burden, upon a *prima facie* showing, to provide a neutral explanation may impose a limitation on the full peremptory character of the challenge; however, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause". Imposing such a requirement is appropriate and essential when peremptory strikes are used to further a discriminatory purpose. Given the importance of peremptory challenges to seating a fair and impartial jury, however, imposing the same requirement when no party makes, or even attempts to make, a showing of purposeful discrimination, lessens the ability to parties and their counsel to obtain an unbiased jury.

The trial judge cites as explanation for his policy the Arizona Supreme Court's Jury Management Standards (Administrative Order No. 92–23, August 4, 1992), the American Bar Association's *Standards Relating to Juror Use and Management*, and a report of the *Arizona Supreme Court Committee on More Effective Use of Juries* (September 1994). Each of these sources details the duty of the trial judge to prevent discrimination. However, none of these sources suggests that the trial judge should eliminate a meaningful step in a process required by the Supreme Court of the United States and the Arizona Supreme Court.[6]

### III.

Based on the foregoing, we accept jurisdiction and order the trial judge to allow the exercise of peremptory strikes without explanation, unless a party makes a *prima facie* showing of purposeful discrimination.

LEVI RAY HAIRE, Retired Judge*, concurs.

6. This case does not raise, and we do not decide, the issue whether a trial judge must, in every case, wait for an objection from one of the parties before requiring an explanation for the use of a peremptory challenge that apparently is based upon purposeful discrimination. *See J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1421 (the equal protection clause affords potential jurors the right to selection procedures that are free from stereotypes rooted in historical prejudice). We do not determine whether, if neither party evidences an interest in protecting the rights of potential ju-

KLEINSCHMIDT, Judge, concurring:

I concur in the result the majority reaches because I believe the law does require a *prima facie* showing of discrimination before the trial judge can require counsel to explain the reason for exercising a peremptory challenge. Because, as I said in my concurring opinion in *State v. Jordan,* 171 Ariz. 62, 67, 828 P.2d 786, 791 (1992), this need for a *prima facie* showing sets too high a hurdle to the eradication of discrimination, were I free to do so I would decline jurisdiction in this case and allow trial judges to proceed as did the judge here.

rors, the trial judge has an obligation or the discretion, sua sponte, to inquire into the reasons for a peremptory challenge.

* The Honorable Levi Ray Haire, retired judge of the Arizona Court of Appeals, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to the Arizona Constitution, article VI, section 20, and Ariz.Rev.Stat.Ann. section 38–813.